IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH A. COLLINGSWOOD-BONSE,          Case No. 6:13-cv-01646-AA

             Plaintiff,          OPINION AND ORDER

      v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

             Defendant.

_____

KATHRYN TASSINARI
BRENT WELLS
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorneys for plaintiff

S. AMANDA MARSHALL
RONALD K. SILVER
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

KATHY REIF
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Elizabeth Collingswood-Bonse ("plaintiff") brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On September 1, 2009, plaintiff filed her most recent DIB and SSI applications.[1] Tr. 165-71. Plaintiff's applications were denied initially and upon reconsideration. Tr. 99-106, 112-16. On October 24, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 8-56. On December 2, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 61-72. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

---

[1] Plaintiff previously applied for benefits, at least twice, based on similar impairments, although in each instance she alleged different disability onset dates. See, e.g., Tr. 83, 188-90.

Page 2 - OPINION AND ORDER

## STATEMENT OF FACTS

Born on December 30, 1967, plaintiff was 40 years old on the amended alleged onset date of disability[2] and 43 years old at the time of the hearing. Tr. 15. Plaintiff graduated from high school and attended three or four semesters of college. Tr. 17, 31-34. She previously worked as a baggage handler, restaurant server, and call center operator. Tr. 19-20, 212-19. Plaintiff alleges disability as of August 7, 2008, due to somatoform disorder, anxiety, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD").

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the

---

[2] Plaintiff initially alleged disability as of February 1, 1981, at which point she was 13 years old. Tr. 165, 169. During the hearing, plaintiff amended the alleged onset date to August 7, 2008. Tr. 13-15.

Page 3 - OPINION AND ORDER

Commissioner's interpretation is rational. Burch v. Barnhart, 400
F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to
establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th
Cir. 1986). To meet this burden, the claimant must demonstrate an
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected . . . to last for a continuous period of not less
than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential
process for determining whether a person is disabled. Bowen v.
Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.
First, the Commissioner considers whether a claimant is engaged in
"substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R.
§§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant
has a "medically severe impairment or combination of impairments."
Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).
If the claimant does not have a severe impairment, she is not
disabled.

At step three, the Commissioner determines whether the
claimant's impairments, either singly or in combination, meet or
equal "one of a number of listed impairments that the
[Commissioner] acknowledges are so severe as to preclude

Page 4 - OPINION AND ORDER

substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform her past work, she is not disabled; if a claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of August 8, 2008. Tr. 63. At step two, the ALJ found that plaintiff had the following severe impairments: anxiety disorder, ADHD, bipolar disorder, and somatoform disorder. <u>Id.</u> At step three, the ALJ determined that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 64.

Page 5 - OPINION AND ORDER

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. Tr. 64-65. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: [she] can perform routine, repetitive tasks and can have occasional contact with the public, coworkers, and supervisors." Tr. 65.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 70. At step five, based on the VE's testimony, the ALJ determined plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as clerical addresser, merchandise marker, and garment classifier/sorter. Tr. 71-72. The ALJ concluded plaintiff was not disabled under the Act. Tr. 72.

## DISCUSSION

Plaintiff contends the ALJ erred by failing to: (1) develop the record; (2) credit counselor Andrew Buck's opinion; (3) find that she met or equaled Listing 12.07 at step three; (4) include a moderate limitation in concentration, persistence, or pace in the RFC; and (5) meet the burden of proof at step five.

I. Duty to Develop the Record

Plaintiff argues that the ALJ should have developed the record further in regard to her ADHD and cognitive impairment. The

Page 6 - OPINION AND ORDER

claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F. 3d 453, 459-60 (9th Cir. 2001) (citation omitted).

Neither the ALJ nor any medical source found the record in this case to be ambiguous or insufficient for proper evaluation. As discussed in greater detail below, plaintiff simply failed to introduce any medical evidence that her ADHD and cognitive impairments resulted in concrete functional limitations beyond those already identified in the RFC. See Pl.'s Opening Br. 16-17 (citing Tr. 503-04). Plaintiff's failure to carry her burden of proof, however, does not equate to an inadequacy or ambiguity in the record, especially in light of the fact that she was represented by counsel at the hearing. See Tr. 55 (plaintiff's counsel declining the ALJ's offer to hold the record open for further development). Under these circumstances, the ALJ's duty to more fully develop the record was not triggered. The ALJ's decision is affirmed as to this issue.

II. Opinion of Mr. Buck

Plaintiff also asserts the ALJ improperly rejected the opinion of Mr. Buck. While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from

"other sources" can be used to determine the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. §§ 404.1513, 416.913. "Other sources" include, but are not limited to, counselors. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of an other, or lay source, the ALJ need only provide a reason that is "arguably germane" to that witness. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010).

Mr. Buck was plaintiff's counselor at South Lane Mental Health. After working with plaintiff for about ten months and meeting with her less than five times, Mr. Buck wrote a letter expressing his opinion on plaintiff's mental health and its impact on her ability to work. Tr. 749-54. In this letter, Mr. Buck reported that plaintiff missed several appointments and, based on that pattern, opined "it is unlikely that she would be able to be at work for 5 days straight without absence and it is also likely she would miss multiple days in a row." Tr. 750. He also noted that plaintiff had "difficulty focusing on getting a task done and moving onto a new task." Id.

The ALJ explicitly discussed Mr. Buck's opinion: "[Mr. Buck's] statements that she would be a poor employee are given little weight as they are from a non-acceptable medical source, outside the therapist's area of expertise and there is no showing that

[plaintiff's] conditions caused this behavior." Tr. 70. An ALJ may reject lay testimony that is not consistent with the medical or other evidence. Lewis, 236 F.3d at 511 (citation omitted).

Based on an independent review of the record, there is no indication that plaintiff's psychological impairments caused the pattern of absences Mr. Buck opined would prevent her from working. See, e.g., Tr. 543, 615 (consulting doctors' findings that plaintiff could maintain a regular work week despite her mental impairments). Indeed, Mr. Buck's opinion was expressly based on plaintiff's failure to comply with treatment, as opposed to any mental health condition. Tr. 750. Further, the same day he wrote his letter, Mr. Buck noted in plaintiff's chart that she was doing well in therapy, such that she "may have less of a need for counseling at this time." Tr. 749. While plaintiff offers an alternative interpretation of this evidence, because the ALJ's reading was rational, it must be upheld. Burch, 400 F.3d at 679. The ALJ's assessment of Mr. Buck's opinion is affirmed.

III. Step Three Finding

Plaintiff contends the ALJ erred by failing to conclude that her somatoform disorder met or equaled Listing 12.07. To establish a listed impairment at step three, the claimant must demonstrate that "all of the specified medical criteria [are met]." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not

qualify." Id.

To satisfy the requirements of Listing 12.07, a claimant must exhibit "[p]hysical symptoms for which there is no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.07. In addition, the claimant must present evidence fulfilling the requirements of both Subsections A and B. Id. Subsection A requires, in relevant part, "[m]edically documented evidence of [an] unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury." Id. Subsection B mandates that the claimant's mental impairment result in at least two of the following: marked restriction in activities of daily living; marked restriction in maintaining social functioning; marked restriction in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Id.

At step three, the ALJ determined plaintiff was mildly restricted in her activities of daily living, moderately restricted in social functioning, and moderately restricted in concentration, persistence, or pace, with no episodes of decompensation. Tr. 64-65. Accordingly, he found plaintiff did not meet or equal the requirements of Listing 12.07, such that she was not presumptively disabled at step three. Id.

In her reply brief, plaintiff argues for the first time that

Page 10 - OPINION AND ORDER

her preoccupation with Charcot-Marie-Tooth, a disease of which there is no medical evidence in the record, meets the criteria of Subsection A. Pl.'s Reply Br. 4-5. Plaintiff also asserts she should have been found markedly limited in concentration, persistence, or pace and social functioning because her somatoform disorder caused her to "[seek] emergency medical treatment frequently, sometimes twice or more per month." Pl.'s Opening Br. 14-15.

Even assuming plaintiff meets Subsection A, she nonetheless failed to satisfy Subsection B and therefore does not meet or equal Listing 12.07. As the ALJ reasonably found, plaintiff's myriad medical visits are largely attributable to her drug seeking behavior. See, e.g., Tr. 66-70, 420-22, 444, 460, 477, 482-83, 493-94, 507, 549-50, 630, 633, 637, 641, 658-59, 661-62, 656-66, 674-75. For instance, in May 2009, plaintiff reported to the emergency room complaining of a migraine. Tr. 661. After it was explained that the emergency department did not treat migraines with narcotics, plaintiff was given Phenergran and Benadryl and asked to remain in the hospital for observation. Id. She started pacing and was anxious to leave, asking if she would be given any "medication" to take home. Id. When hospital staff responded in the negative, plaintiff refused to discuss further treatment with the doctor and left without signing discharge papers, stating "she will be talking to her attorney." Id.

Page 11 - OPINION AND ORDER

Christopher Bolz, M.D., plaintiff's treating physician for almost two years, documented his concerns about plaintiff's drug seeking behavior. See Tr. 477, 550 ("[s]he stormed out of my office more than once because I refused to giver her pain medication"). On multiple occasions plaintiff's physicians also observed that she did not appear to be in as much pain as she reported. Tr. 428, 456-58, 462, 478-79, 519-20. Moreover, in 2006, plaintiff attempted to fill a photocopied prescription for Percocet at two different pharmacies. Tr. 420-22.

Thus, the record supports the ALJ's conclusion that many of plaintiff's medical visits were attributable to her drug seeking behavior, as opposed to her somatoform disorder. Therefore, the ALJ reasonably concluded that plaintiff's somatoform disorder caused only moderate restrictions in social functioning and concentration, persistence, or pace. The ALJ's step three finding is affirmed.

IV. RFC Assessment

Plaintiff next argues the ALJ erred when formulating her RFC. Specifically, plaintiff contends the ALJ's RFC assessment ignores his own finding at step three that she is moderately limited with regard to concentration, persistence, or pace. The RFC is the maximum a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining the RFC, the ALJ must consider limitations imposed by all of the claimant's impairments, even those that are not severe, and evaluate "all of the relevant

medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

It is well-establish in this District that "the term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment." Davis v. Astrue, 2012 WL 4005553, *10 (D.Or. June 12), adopted by 2012 WL 3614310 (D.Or. Aug. 21, 2012) (citations omitted). Rather, the mild, moderate, or severe limitations, in the broad categories of activities of daily living, social functioning, and concentration, persistence, or pace, "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, available at 1996 WL 374184, *4. The "RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," based on all of the relevant evidence of record, including "statements about what you can still do made by nonexamining physicians and psychologists." Id.; 20 C.F.R. § 416.913(c). In sum, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th

Cir. 2008) (citation omitted).

Here, the Court finds that plaintiff's RFC for routine, repetitive work is consistent with the medical opinions and other evidence of the record. Tr. 65. Plaintiff testified at the hearing that she is able to clean and fold laundry, do the dishes, and shop. Tr. 40-41. On her Adult Function Report, plaintiff did not indicate any difficulty with completing tasks, concentration, understanding, or following instructions. Tr. 269. Moreover, consulting source Sandra Lundblad, Psy.D., found that, although plaintiff's "[p]ace is occasionally disrupted by her focus on her physical problems/concerns," she retains the "ability to maintain a regular work day/week." Tr. 615. Dr. Lundblad further noted that because "complex tasks are likely to cause an increase in anxiety and somatization [symptoms]," plaintiff "should be limited to simple, repetitive work."[3] Id.; see also Tr. 543 (Dorothy Anderson, Ph.D., another consulting source, making the same findings).

---

[3] Plaintiff challenges the ALJ's use in the RFC of the term "routine" in lieu of the word "simple." Even assuming that the ALJ erred in this regard, such an error was harmless because the jobs identified by the VE are "unskilled" and therefore require only "simple duties that can be learned on the job in a short period of time." SSR 00-4p, available at 2000 WL 1898704; 20 C.F.R. § 404.1568; see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). Indeed, the VE expressly testified that the representative occupation of garment classifier/sorter is "unskilled," "simple[,] and routine," and a significant number of these jobs exist in the national and local economy. Tr. 47; see also McCown v. Colvin, 2015 WL 106056, *6 n.6 (D.Or. Jan. 6, 2015).

The ALJ gave the opinions of Drs. Lundblad and Anderson great weight and plaintiff does not now challenge the ALJ's decision on this basis. Tr. 70; see generally Pl.'s Opening Br. In addition, there is no medical evidence in the record establishing that plaintiff is unable to perform the tasks identified in the RFC. Therefore, the ALJ reasonably concluded that plaintiff is capable of doing routine, repetitive tasks, despite any moderate limitation in concentration, persistence, or pace.[4] See Vanblaricum v. Colvin, 2014 WL 991834, *10 (D.Or. Mar. 13, 2014) (upholding the ALJ's decision under analogous circumstances). The ALJ's RFC assessment is affirmed.

## V. Step Five Finding

Lastly, plaintiff asserts the ALJ erred at step five by formulating a RFC that failed to account for her moderate impairment in concentration, persistence, or pace, as well as the limitations described in Mr. Buck's testimony. As discussed herein, the ALJ properly translated plaintiff's moderate impairments into

---

[4] To the extent plaintiff contends the RFC is also deficient because it does not incorporate her need for a "low stress" work environment, her argument is unavailing. Drs. Anderson and Lundblad noted plaintiff's somatic focus and complaints "will not be problematic in low stress, simple work settings in which social contact is limited to simple contexts." Tr. 543, 615. Furthermore, the VE testified that stress is not measured vocationally. Tr. 49. Given this testimony, no formulation of plaintiff's RFC would allow the ALJ to ensure stressful situations are eliminated entirely. Nevertheless, the ALJ minimized potential stressful situations by limiting the RFC to routine, repetitive tasks and occasional contact with the public, coworkers, and supervisors. The ALJ did not err in this regard.

concrete functional limitations in the RFC. Moreover, the ALJ provided legally sufficient reasons, supported by substantial evidence, for disregarding Mr. Buck's opinion. As such, plaintiff's contention, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217-18 (9th Cir. 2005); <u>Stubbs-Danielson</u>, 539 F.3d at 1175-76. The ALJ's step five finding is upheld.

**CONCLUSION**

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _____ day of February 2015.


_____
Ann Aiken
United States District Judge